UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:

JOHN FRANK PEREZ and MELISSA LYN PEREZ,

        Debtor(s).

_____

JOHN FRANK PEREZ and MELISSA LYN PEREZ,

        Plaintiff(s),

v.

DIRECT LOANS WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM and U.S. DEPARTMENT OF EDUCATION, DEPARTMENT OF ED/GREAT LAKES, DEPARTMENT OF ED/NELNET, STAFFORD STUDENT LOANS, BROOKS INSTITUTE,

        Defendant(s).

_____

Case No. 16-28473-B-7

Adversary No. 17-2136

DC No. USA-1

FILED
FEB 20 2018
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

**MEMORANDUM DECISION GRANTING DEFENDANT U.S. DEPARTMENT OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Before the court is a motion for summary judgment filed by defendant United States Department of Education ("USDOE"). USDOE moves for summary judgment determining that approximately $234,022.21 in parent student loans that Plaintiffs John Frank Perez and Melissa Lyn Perez ("Plaintiffs") obtained for their daughter Nicole Perez are nondischargeable under 11 U.S.C. § 523(a)(8).

A hearing on USDOE's motion for summary judgment was held on February 20, 2018. Appearances were noted on the record. The court stated a summary of its decision to grant USDOE's motion on the record in open court. This written decision supplements that summary. To the extent there is any conflict between the court's summary stated on the record in open court and this written decision, this written decision controls. See Playmakers LLC v. ESPN, Inc., 376 F.3d 894, 896 (9th Cir. 2004) (citation omitted).

Material facts are not in dispute. And based on the undisputed facts, Plaintiffs cannot establish "undue hardship" as a matter of law. Therefore, for the reasons explained below, USDOE's motion for summary judgment will be granted, judgment in favor of USDOE and against Plaintiffs will be entered, and Plaintiffs' student loan debt to USDOE will be nondischargeable in Plaintiffs' chapter 7 case.[1]

**PRELIMINARY MATTERS**

During a status conference held on September 19, 2017, Plaintiffs' attorney stated on the record that Plaintiffs did not object to the dismissal of defendants Direct Loans William D. Ford Federal Direct Loan Program, Stafford Student Loan, Great Lakes Educational Loan Services, Inc., and Nelnet. Plaintiffs' attorney was directed to prepare a stipulation for the dismissal of those defendants. He did not. Nevertheless, the clear intent

---

[1] USDOE's request for judicial notice of the dockets in this adversary proceeding and in the Plaintiffs' underlying chapter 7 case, no. 16-28473, is granted. See Fed. R. Evid. 201; United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

being to dismiss the defendants named herein above, and Plaintiffs' counsel having stated on the record in open court that Plaintiffs do not object to the dismissal of those defendants, as to Direct Loans William D. Ford Federal Direct Loan Program, Stafford Student Loan, Great Lakes Educational Loan Services, Inc., and Nelnet, this adversary proceeding will be ordered dismissed without prejudice.

There also is no evidence that any of the student loans at issue in this adversary proceeding were made by defendant Brookings Institute. In fact, Mrs. Perez testified during her deposition that this adversary proceeding concerns a dispute over student loans that Plaintiffs obtained from USDOE. See Adv. Dkt. 18, Ex. 1 at 35:1-36:22 and Ex. 14 thereto.[2] Therefore, as to defendant Brookings Institute, this adversary proceeding will also be ordered dismissed without prejudice.

Plaintiffs did not timely request a Rule 56(d) continuance or demonstrate (by affidavit, declaration, or otherwise) what, if any, additional facts exist and/or how any such additional facts, if any, would preclude summary judgment. See Fed. R. Civ. P. 56(d); Fed. R. Bankr. P. 7056; Chance v. Pac-Tel Teletrac, Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). USDOE's motion for summary judgment is also unopposed. And so on that basis Plaintiffs' default, and the defaults of all parties entitled to oppose USDOE's motion for summary judgment and who did not, are entered. See Fed. R. Civ. P. 55; Fed. R. Bankr. P. 7055 & 9014.

---

[2] All page numbers are pages numbers of Ex. 1 at Adv. Dkt. 18 and not page numbers of the deposition attached as Ex. 1.

The court is mindful that it may not grant a motion for summary judgment solely because it is unopposed. <u>Cristobal v. Siegel</u>, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). However, the court may grant an unopposed motion for summary judgment if the movant's papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact. <u>See Carmen v. San Francisco Unified School District</u>, 237 F.3d 1026, 1029-30 (9th Cir. 2001); <u>Pinder v. Employment Dev. Dept.</u>, 227 F. Supp. 2d 1123, 1135-36 (E.D. Cal. 2017). But even then, the court has an independent obligation to evaluate the sufficiency of the moving papers. <u>Lopez-Gomez v. Sessions</u>, 693 Fed. Appx. 729, 731 (9th Cir. 2017) (citing <u>Cristobal</u>, 26 F.3d at 1496). The court will proceed to do so.

**UNDISPUTED FACTS**

<u>Plaintiffs' Background</u>

Plaintiffs were married in 1998. Adv. Dkt. 18, Ex. 1 at 11:14-15. Mrs. Perez is 41 years old and Mr. Perez is 44 years old. <u>Id.</u> at 10:24. Plaintiffs have four children, Nicole, age 25, and three minor children ages 14, 10, and 8. <u>Id.</u> at 11:16-12:20. Nicole has lived in Southern California since approximately 2011. <u>Id.</u> at 12:25-13:5.

Mrs. Perez has an associates degree in accounting and a bachelor of arts degree from Simpson University. <u>Id.</u> at 14:2-114-21. She has worked her entire professional career with Tri Counties Bank. <u>Id.</u> at 17:12-14. She worked as a Branch Manager and/or Regional Manager from 2008 to present, before that she was a Banker from 2001-2008, and before that she was a teller

from 1995-2001. <u>Id.</u> at 15:4-17:7. She has the usual employment benefits including health insurance, retirement, and leave. <u>Id.</u> at 23:7-17; BK Dkt. 1, Schedule I. Through her employment, Mrs. Perez has amassed approximately $167,000.00 in an employer profit-sharing plan and 401(k), all of which she claimed as exempt in her chapter 7 case. BK Dkt. 1, Schedules A, C.

Mr. Perez works in construction and has for twenty-three years. Adv. Dkt. 18, Ex. 1 at 18:22-19:2; BK Dkt. 1, Schedule I. He also has the usual employment benefits including health insurance, retirement, and leave. Adv. Dkt. 18, Ex. 1 at 23:7-17; BK Dkt. 1. Although his employment tends to fluctuate, he does have overtime available which increases his income above his base pay. Adv. Dkt. 18, Ex. 1 at 19:4-8. Through his employment, Mr. Perez has amassed over $218,000.00 in an employer pension plan, all of which he claimed as exempt in his chapter 7 case. BK Dkt. 1, Schedules A, C.

Plaintiffs are in good health. They have no medical conditions that affect their ability to earn income or work. Adv. Dkt. 18, Ex. 1 at 18:6-10. Neither are without skill sets and both have significant experience in their relative occupations.

<u>Plaintiffs' Income</u>

Mrs. Perez testified during her deposition that she is paid $4,3184 [sic] twice per month. Adv. Dkt. 18, Ex. 1 at 22:15-23:4. That translates to $103,632.00 gross annually. Adv. Dkt. 18, Ex. 1 at 18:19-21. Mr. Perez reported gross monthly income of $6,113.06 in his bankruptcy schedules. BK Dkt. 1, Schedule I. That translates to $73,356.72 annually. Schedule I is signed

under penalty of perjury and Mrs. Perez testified during her deposition that Schedule I was accurate when it was filed. Adv. Dkt. 18, Ex. 1 at 19:13-22. Plaintiffs' combined annual gross income from employment is $176,988.72 ($73,356.72 + $103,632.00).

In addition to their income from employment, Plaintiffs' also receive $12,600.00 gross annually in rental income. BK Dkt. 1, Official Form 122A-1 at line 6 & Schedule I.

Plaintiffs' annual gross employment and rental income totals $189,588.72 ($176,988.72 + $12,600.00).[3] Plaintiffs' annual gross income translates to a monthly gross income of $15,799.06.

Plaintiffs' Deductions and Expenses

Plaintiffs report combined monthly payroll deductions for taxes, insurance, and a required retirement fund loan payment of $4,187.13. BK Dkt. 1, Sch. I. Plaintiffs also report monthly deductions for ordinary and necessary rental operating expenses of $282.96. BK Dkt. 1, Official Form 122A-1 at line 6. Combined, Plaintiffs' monthly payroll and rental expense deductions total $4,470.09. Subtracting those monthly payroll and rental expense deductions ($4,470.09) from Plaintiffs' gross monthly income ($15,799.06) leaves Plaintiffs with net monthly income $11,328.97.

Plaintiffs report monthly expenses of $10,773.12. BK Dkt. 1, Schedule J. Plaintiffs' monthly expenses include a monthly payment of $510.00 for bare land located at Webb Road, Anderson,

---

[3] Plaintiffs' annual gross income exceeds the median family income of $91,412.00 by over $98,000. It also exceeds 2017 federal poverty guidelines of $28,780 for a five-person family/household by over $160,000. See https://aspe.hhs.gov/poverty-guidelines.

California ("Webb Road"). Adv. Dkt. 18, Ex. 1 at 24:18-26:15. Webb Road has no equity and has been listed for sale for more than two years. <u>Id.</u> Webb Road has no value but Plaintiffs have not considered surrendering the property. <u>Id.</u> at 26:16-27:4. Plaintiffs also own a vehicle that Nicole uses in Southern California. <u>Id.</u> at 28::4-25. Plaintiffs' pay $609.00 per month for vehicle insurance and more than one-third of that amount is attributable to the vehicle used by Nicole. <u>Id.</u> Plaintiffs' other notable monthly expenses include $626.00 per month for the operating expense of two vehicles, BK Dkt. 1, Official Form 122A-2 line 12, and $1,850.00 per month for food and clothing, <u>id.</u> at line 6.

<u>Plaintiffs' Student Loans</u>

In June 2011 USDOE received an Application and Master Promissory Note for a parent student loan in the name of Mrs. Perez. Adv. Dkt. 18, Ex. 1 at Exhs. 8, 9 & 14 thereto. The application was received electronically in the usual manner. <u>Id.</u> It included the necessary Personally Identifiable Information for Mrs. Perez including: driver's license number, social security number, date of birth, email address, permanent address, telephone number, employer, and references. <u>Id.</u> It was electronically signed with a Personal Identification Number ("PIN") created by the applicant. <u>Id.</u>; Dkt. 18, Ex. 1 at 33:13-20, 34:1-4, & 41:13-16. The application was verified in the usual manner with a PIN and certifications and acceptance of the terms of the loan. <u>Id.</u> Mrs. Perez does not dispute using the electronic student loan application or signing it; however, she claims that she did not understand the consequences of what she

was doing. Adv. Dkt. 18, Ex. 1 at 29:19-34:4, 41:13-23.

USDOE disbursed parent student loans to the Plaintiffs between 2011-2015 for Nicole's educational expense at Brooks Institute in Santa Barbara, California. Id. at 35:1-36:13. Nicole graduated from Brooks Institute in 2015. Id. at 37:22-38:3. Plaintiffs' student loan debt is approximately $234,022.21. Id. at Exhibit 14.

Plaintiffs have made no payments on their student loans. Id. USDOE granted Plaintiffs a deferment on April 4, 2012, until Nicole was no longer enrolled in school, which means the deferment ended in 2015. Adv. Dkt. 18, at Ex. 12 thereto. Thereafter, Plaintiffs filed a voluntary chapter 7 petition in December 2016, BK. Dkt. 1, and received a discharge on May 1, 2017. BK Dkt. 17. Plaintiffs discharged approximately $64,926.06 in credit card debt and approximately $64,079.72 in unsecured loans. BK Dkt. 1, Schedules E/F.

After the Plaintiffs filed their chapter 7 petition, Mrs. Perez made an inquiry about an Income Contingent Repayment Plan ("ICRP"). Adv. Dkt. 18, Ex, 1 at 38:12-23. Under ICRP, a borrower's income is reviewed annually, adjusted accordingly, and after twenty-five years discharged. 34 C.F.R. § 682.215. Although Mrs. Perez anticipated an ability to repay the student loan debt in less than twenty-five years, she refused to consider or participate in an ICRP because Plaintiffs are dissatisfied with the education Nicole received and based on her calculation it would require monthly payments of about $2,000.00. Adv. Dkt. 18, Ex. 1 at 39:7-40:10. Plaintiffs filed the complaint that initiated this adversary proceeding in July 2017 in an effort to

discharge their student loan debt under § 523(a)(8). Adv. Dkt. 1.

**JURISDICTION AND VENUE**

Federal subject-matter jurisdiction is founded on 28 U.S.C. § 1334. This matter is a core proceeding that a bankruptcy judge may hear and determine. 28 U.S.C. §§ 157(b)(2)(A), (I), and (O). To the extent it may ever be determined to be a matter that a bankruptcy judge may not hear and determine without consent, the parties nevertheless consent to such determination by a bankruptcy judge. 28 U.S.C. § 157(c)(2). Venue is proper under 28 U.S.C. § 1409.

**APPLICABLE LEGAL STANDARDS**

Student loan obligations are presumptively nondischargeable in bankruptcy under § 523(a)(8) absent a showing of "undue hardship." Hedlund v. Educ. Resources Inst., Inc., 718 F.3d 848, 851 (9th Cir. 2013). Section 523(a)(8) states:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt-- unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend[.]

11 U.S.C. § 523(a)(8)(A).

The lender has the initial burden under § 523(a)(8) to establish the existence of the debt and that the debt is an educational loan within the statute's parameters. Roth v. Educ.

Credit Mgmt. Corp., 490 B.R. 908, 916-17 (9th Cir. BAP 2013) (citation omitted).

Once the lender meets its burden, the burden shifts to the debtor to prove "undue hardship." Hedlund, 718 F.3d at 851; Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087-88 (9th Cir. 2001); Roth, 490 B.R. at 916-17. To show "undue hardship," a debtor must prove the following three elements:

> (1) an inability to maintain, based on current income and expenses, a "minimal" standard of living for herself and dependents if obligated to repay the loan(s);
>
> (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan(s); and
>
> (3) good faith efforts to repay the loan(s).

Hedlund, 718 F.3d at 851 (citing Brunner v. New York Higher Educ. Serv. Corp., 831 F.2d 395 (2d Cir. 1987));[4] Educ. Credit Mgmt. Corp. v. Mason (In re Mason), 464 F.3d 878, 881-82 (9th Cir. 2006). The debtor must prove all three prongs before a discharge of student loans may be granted. Mason, 464 F.3d at 882; Rifino, 245 F.3d at 1087-88. Failure to prove any one means the student loans will not be discharged. Mason, 464 F.3d at 882; see also Nys Educ. Credit Mgmt. Corp. (In re Nys), 308 B.R. 436, 441-42 (9th Cir. BAP 2004), aff'd, 446 F.3d 938 (9th Cir. 2006).

USDOE has satisfied its initial § 523(a)(8) burden. Mrs. Perez testified during her deposition that all student loans at issue in this adversary proceeding are student loans within the

---

[4] The Ninth Circuit adopted Brunner in United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108, 1111-112 (9th Cir. 1998).

1  meaning of § 523(a)(8), those student loans are owed to USDOE,
2  and the balance of those student loans is approximately
3  $234,022.21. Adv. Dkt. 18, Ex. 1 at 35:1-36:22 & Ex. 14 thereto.
4  That means Plaintiffs must now establish "undue hardship" by
5  proving all three of the Brunner prongs. And that is where the
6  summary judgment burden comes into play.

7  　　　Federal Rule of Civil Procedure 56 (applicable by Federal
8  Rule of Bankruptcy Procedure 7056) states that summary judgment
9  is appropriate if documents, depositions, answers to
10 interrogatories, admissions on file, and declarations, if any,
11 show that there is "no genuine issue of fact and that the moving
12 party is entitled to judgment as a matter of law." Fed. R. Civ.
13 P. 56(a), (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323
14 (1986). All reasonable inferences to be drawn from the
15 underlying facts must be viewed in the light most favorable to
16 the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio
17 Corp., 475 U.S. 574, 587 (1986) (quoting United States v.
18 Diebold, Inc., 369 U.S. 654, 655 (1962)).

19 　　　"The initial burden of showing the absence of a material
20 factual issue is on the moving party. Once that burden is met,
21 the opposing party must come forward with specific facts, and not
22 allegations, to show that a genuine factual issue remains for
23 trial." DeHorney v. Bank of America N.T.& S.A., 879 F.2d 459,
24 464 (9th Cir. 1989); see also Celotex, 477 U.S. at 324-25. When,
25 as here, the moving party does not bear the burden of proof at
26 trial it may discharge its summary judgment burden of showing no
27 genuine issue of material fact remains by demonstrating "there is
28 an absence of evidence to support the nonmoving party's case."

Celotex, 477 U.S. at 325. Summary judgment is appropriate if the nonmoving party fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000).

**DISCUSSION**

I.  **The First Brunner Prong is not Satisfied.**

When analyzing whether a "minimal" standard of living can be maintained if loans are repaid, "the debtor must demonstrate more than simply tight finances." Rifino, 245 F.3d at 1088 (citation omitted). The standard is more than temporary financial adversity and short of utter hopelessness. Id.

The first Brunner prong is typically addressed by subtracting the debtor's average monthly expenses from net monthly income. Pena, 155 F.3d at 1112-113. Doing that here demonstrates that not only do Plaintiffs have monthly disposable income, but, they have the ability to significantly increase the amount of that disposable income going forward with very slight adjustments to monthly expenses.

Plaintiffs' have net monthly income of $11,328.97. Their reported monthly expenses total approximately $10,733.12. At current levels, that means Plaintiffs have monthly net disposable income of at least $595.85. With very slight adjustments to just a few of their monthly expenses, Plaintiffs have the ability to significantly increase their monthly disposable income and, thus, have the ability to make some payments in repayment of their student loans. Indeed, "[i]t is the [d]ebtor[s'] duty to adjust

[their] lifestyle to allow [them] to make the payments on [their] student loan[s.]" United Student Aid Funds, Inc. v. Nascimento (In re Nascimento), 241 B.R. 440, 446 (9th Cir. BAP 1999).

Plaintiffs could immediately increase their monthly disposable income by surrendering Webb Road which, so far, they have failed or refused to consider. That would give the Plaintiffs an additional $510.00 in monthly income.

Plaintiffs could also terminate vehicle insurance payments for their adult daughter who lives outside the household in Southern California. Doing that would add at least an additional $200.00 per month to the Plaintiffs' monthly income.

Plaintiffs' $626.00 monthly vehicle operating cost claimed for two vehicles exceeds the IRS Standard of $440.00 per month. https://www.justice.gov/ust/eo/bapcpa/20171101/bci_data/IRS_Trans_Exp_Stds_WE.htm. An adjustment to this expense to the national standard results in an additional $226.00 in Plaintiffs' monthly income.

Plaintiffs' $1,850.00 monthly food and clothing expense also exceeds the applicable IRS Standard of $1,360.00 per month. https://www.justice.gov/ust/eo/bapcpa/20171101/bci_data/national_expense_standards.htm. An adjustment to this expense to the national standard results in an additional $490.00 in Plaintiffs' monthly disposable income.

In total, Plaintiffs have the ability to increase their monthly disposable income by at least an additional $1,426.00 with very slight adjustments to their expenses and lifestyle. Adding that additional amount to the $595.85 monthly income already available to the Plaintiffs at the current unadjusted

- 13 -

monthly expense levels gives Plaintiffs over $2,000.00 per month in income after their expenses are met. With the recent discharge of nearly $125,000.00 in unsecured debt, that puts Plaintiffs well above minimal living standards for themselves and their dependants even if they are required to repay their student loan debt. The first <u>Brunner</u> prong is not satisfied.

II. <u>The Second Brunner Prong is not Satisfied.</u>

In order to satisfy the "additional circumstances" element of the second prong, the debtor must show circumstances beyond a mere current inability to pay that are likely to persist throughout the repayment period. <u>Educ. Credit Mgmt. Corp v. Nys (In re Nys)</u>, 446 F.3d 938, 945-47 (9th Cir. 2006). "The circumstances need be 'exceptional' only in the sense that they demonstrate insurmountable barriers to the debtor's financial recovery and ability to pay." <u>Id.</u> at 946; <u>Pennsylvania Higher Education Assistance Agency v. Birrane (In re Birrane)</u>, 287 B.R. 490, 497 (9th Cir. BAP 2002). This prong looks to the future and, to some extent, requires the court to speculate as to whether the debtor's financial condition will improve sufficiently to permit the repayment of student loan obligations. <u>Nys</u>, 446 F.3d at 945-46; <u>Birrane</u>, 287 B.R. at 498-99.

Notably, there is a presumption that a debtor's financial condition will improve. As the Ninth Circuit explained in <u>Nys</u>:

> We do not presume that an individual's present inability to make loan payments will continue indefinitely. Rather, we hold that the burden is on the debtor to provide the court with additional circumstances, *i.e,* 'circumstances, beyond the mere inability to pay, that show that the inability to pay is likely to persist for a significant portion of the prepayment period.

> [. . .]
>
> We will presume that the debtor's income will increase to a point where [the debtor] can make payments and maintain a minimal standard of living; however, the debtor may rebut that presumption with 'additional circumstances' indicating that her income cannot reasonably be expected to increase and that her inability to make payments will likely persist throughout a substantial portion of the loan's repayment period.

Nys, 446 F.3d at 946.

Plaintiffs do not face insurmountable barriers to the repayment of their student loan debt because their current financial situation is not likely to persist during any repayment period. In fact, Plaintiffs' financial condition is likely to improve substantially over the next twenty-five years.

Plaintiffs have steady employment and significant experience in their respective occupations. Mrs. Perez is college-educated. Mr. Perez has the ability to earn overtime pay. Plaintiffs are not without skill sets.

Plaintiffs are in their early forties which means they can continue to work for another twenty to twenty-five years. Both are in good health and neither has any medical condition that prevents them from working.

Plaintiffs also recently discharged over $125,000.00 in unsecured debt. They will continue to pay down and ultimately payoff secured debt. Their dependants will grow and eventually leave the household. And significantly, they have amassed over $400,000.00 in retirement fund accounts.

In short, Plaintiffs do not face insurmountable barriers to the repayment of their student loans during the loan repayment period. If anything, Plaintiffs' current financial situation is

1  more the product of choice in the spending of monthly paychecks
2  rather than ill health, lack of education, or some other
3  circumstance beyond their control that is likely to continue over
4  a loan repayment period.  Moreover, because Plaintiffs have
5  elected to allocate funds that could be used to repay their
6  student loans to non-essential items, they are unable to prove
7  that they have adverse financial conditions that are likely to
8  persist into the future and during a significant portion of the
9  repayment period.  See Furneri v. Graduate Loan Center, et al.,
10 266 B.R. 447 (D. Alaska 2001); see also Nys, 446 F.3d at 946.
11 The second Brunner prong is not satisfied.
12 The Third Brunner Prong is not Satisfied
13      Plaintiffs have not made any good faith efforts to repay
14 their student loan debt.  And that is because Plaintiffs have not
15 made *any* effort to repay their student loan debt.
16      Good faith is measured by the debtor's efforts to obtain
17 employment, maximize income, and minimize expenses.  Hedlund, 718
18 F.3d at 852; Birrane, 287 B.R. at 499.  Courts also consider
19 whether the debtor has made any payments on the loan prior to
20 filing for discharge, Jorgensen v. Educ. Credit Mgmt. Corp., 479
21 B.R. 79, 89 (9th Cir. BAP 2012), whether the debtor has sought
22 deferments or forbearances, East v. Educ. Credit Mgmt. Corp. (In
23 re East), 270 B.R. 485, 495 (Bankr. E.D. Cal. 2001), and the
24 timing of the debtor's attempt to have the loan discharged.
25 Educ. Credit Mgmt. Corp. v. DeGroot (In re DeGroot), 339 B.R.
26 201, 214 (D. Or. 2006).  And although not dispositive, courts
27 consider a "debtor's effort-or lack thereof-to negotiate a
28 repayment plan[.]"  Mason, 464 F.3d at 884; Hedlund, 718 F.3d at

1 | 851; <u>Birrane</u>, 287 B.R. at 499.  The latter entails the debtor's
2 | consideration of consolidation efforts.  <u>Nys</u>, 446 F.3d 938.
3 |     Plaintiffs' employment is not at issue.  However, as
4 | explained above, Plaintiffs have the ability (and obligation) to
5 | minimize monthly expenses so as to maximize net income which they
6 | so far have failed or refused to do.
7 |     Plaintiffs also made no efforts to repay the student loans.
8 | The loans originated in 2011.  They were in deferment status
9 | until 2015.  When the deferment ended and the loans entered
10 | repayment status, Plaintiffs made no payments.  Instead,
11 | Plaintiffs filed a chapter 7 petition in December 2016 and
12 | thereafter in July 2017 they filed this adversary proceeding in
13 | an effort to have their student loans discharged.  Plaintiffs
14 | only inquired about an ICRP plan after they filed bankruptcy-and
15 | then immediately rejected it.  In short, there are no good faith
16 | efforts to repay when efforts to repay are non-existent in the
17 | first instance.  The third <u>Brunner</u> prong is not satisfied.

## CONCLUSION

Based on all the foregoing,

All defendants, except USDOE, in this adversary proceeding will be dismissed without prejudice.

The USDOE's motion for summary judgment will be granted.

Judgment for USDOE and against Plaintiffs, jointly and severally, will be entered providing that Plaintiffs' student

1  loan debt owed to USDOE is not excepted from discharge in the
2  Plaintiffs' chapter 7 case.
3       Appropriate orders and judgment will issue.

                              _____
                              UNITED STATES BANKRUPTCY JUDGE

# INSTRUCTIONS TO CLERK OF COURT
## SERVICE LIST

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

David M. Brady
280 Hemsted Dr Suite B
Redding CA 96002

Jeffrey J. Lodge
2500 Tulare St #4401
Fresno CA 93721